UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

MICHELE CZARAPATA
1429 Maricopa Drive
Oshkosh, Wisconsin 54904

     Plaintiff,

     vs.                                                   Case No: 15-cv-00032

PSYSICIANS MUTUAL INSURANCE COMPANY    **JURY TRIAL DEMANDED**
2600 Dodge Street
Omaha, Nebraska 68103

     Defendant.

## COMPLAINT

COMES NOW the Plaintiff, Michelle Czarapata, by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against the Defendant, alleges and shows to the court as follows:

1. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this case involves a federal question under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

2. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Ms. Czarapata's state law claims, because they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue in this District is proper pursuant to 28 U.S.C. §1391(b) and (c), because a substantial portion of the events or omissions giving rise to the claims occurred in this District, and Defendant has substantial and systematic contacts in this District.

4.      Plaintiff, Michelle Czarapata, is an adult female resident of the State of Wisconsin residing in Winnebago County with a post office address of 1429 Maricopa Drive, Oshkosh, Wisconsin 54904.

5.      Defendant, Physicians Mutual Insurance Company ("Physicians Mutual"), is a foreign company with a principal office of 2600 Dodge Street, Omaha, Nebraska 68103.

6.      Defendant is engaged in "commerce" and/or its employees are engaged in "commerce," as that term is defined in 29 U.S.C. § 203(b).

7.      Defendant employs two or more employees and generates annual revenues of at least $500,000.

8.      According to Defendant's website, it "offers a wide variety of health and life insurance products, ranging from hospital and medical insurance policies to Medicare Supplement, from dental insurance to annuities to whole and term life insurance."

9.      Ms. Czarapata was employed by Defendant at its Oshkosh, Wisconsin location as a non-exempt, hourly employee within the three years preceding the filing of this Complaint.

10.     Ms. Czarapata's last day of work at Defendant was on or about October 24, 2014.

11.     In March 2011, Defendant hired Ms. Czarapata as an Administrator.

12.     Defendant employed Ms. Czarapata as an Administrator on a full-time basis, working approximately forty (40) hours or more per work week.

13.     Ms. Czarapata was employed as an Administrator during the entirety of her employment with Defendant.

14.     During Ms. Czarapata's employment as an Administrator with Defendant, she reported directly to Carol Springstroh, Division Office Coordinator. Springstroh reported directly

to Michael Eggleston, Manager, until on or about May 10, 2013, and subsequent to on or about May 10, 2013, reported directly to Todd Kawski, Manager.

15. During Ms. Czarapata's employment as an Administrator with Defendant and upon her hire, Defendant compensated her at an hourly rate of $15.35

16. As of approximately July 1, 2012, Defendant compensated Ms. Czarapata at an hourly rate of $16.48 per hour.

17. As of approximately July 1, 2013, Defendant compensated Ms. Czarapata at an hourly rate of $16.92 per hour.

18. As of approximately July 1, 2014, Defendant compensated Ms. Czarapata at an hourly rate of $17.48 per hour.

19. During Ms. Czarapata's employment as an Administrator with Defendant, Defendant compensated Ms. Czarapata at an hourly rate of pay for all hours worked.

20. In Ms. Czarapata's position as an Administrator with Defendant, her job duties or job responsibilities included: updating daily reports; entering new insurance applications; running errands and picking up mail from the post office; processing customer claims, address and name changes, benefit changes, beneficiary changes, and death notices; managing the jobs.com and zip recruiter websites; creating customized recruiting letters, job postings, and event calendar postings; performing resume searches; contacting recruits and scheduling phone interviews and training; working with and providing software training to new and existing agents; providing policy and benefit information to agents; running quotes; coordinating sales leads, reviewing the leads, and distributing the leave to individual agents; providing customer service; processing supply shipments; creating PowerPoint presentations for recruiting incentives, sales incentives, meetings,

and other company activities; posting notifications and posters throughout the community for Defendant's products and services, particularly Medicare Seminars; assisting with Medicare Seminars and Career Sales Orientations; and other, miscellaneous, related duties and responsibilities.

21. In Ms. Czarapata's position as an Administrator with Defendant, she frequently worked in excess of forty (40) hours per week.

22. During Ms. Czarapata's employment with Defendant, Defendant did not compensate Ms. Czarapata with overtime pay at a rate of time and one half for each hour she worked in excess of forty (40) hours each workweek.

23. During Ms. Czarapata's employment with Defendant, it suffered or permitted her to work without appropriately and legally compensating her for each hour worked.

24. During Ms. Czarapata's employment with Defendant as an Administrator, Ms. Czarapata's normal or customary days of work were Mondays through Fridays, 8:30 a.m. to 5:00 p.m., with occasional work on the weekends, Saturdays and/or Sundays, and flex time and as instructed by Defendant.

25. During Ms. Czarapata's employment with Defendant, Defendant maintained the following process or procedure regarding compensation of hourly employees: (1) employees recorded their hours of work via a timekeeping system (hereinafter simply "clocking-in" or "clocking-in" and "clocking-out" or "clocked-out"); (2) Defendant collected or received the employees' hours of work that the employees recorded via the timekeeping system; (3) Defendant issued employees their paychecks based on the hours of work recorded and reflected via the timekeeping system.

26. During Ms. Czarapata's employment with Defendant, once an employee clocked-in and clocked-out via Defendant's timekeeping system, the employee could not alter, change, or adjust his or her time entries – only a Supervisor or Manager could alter, change, or adjust an employee's time once entered into Defendant's timekeeping system.

27. At no time during Ms. Czarapata's employment at Defendant did Defendant inform Ms. Czarapata that a specific process had to be followed in order to record or be compensated for work performed in excess of forty (40) hours.

28. During Ms. Czarapata's employment with Defendant, Ms. Czarapata recorded her hours of work via Defendant's timekeeping system.

29. During Ms. Czarapata's employment with Defendant, Defendant collected or received Ms. Czarapata's hours of work via the timekeeping system and issued her paychecks based on the hours of work recorded and reflected via the timekeeping system.

30. During Ms. Czarapata's employment with Defendant, her paychecks did not properly, accurately, and legally compensate her for all hours worked.

31. During Ms. Czarapata's employment with Defendant and immediately before clocking-in for a shift via the timekeeping system, Ms. Czarapata performed compensable work.

32. During Ms. Czarapata's employment with Defendant and immediately before clocking-in for a shift via the timekeeping system, Ms. Czarapata performed compensable work at the direction of Defendant.

33. During Ms. Czarapata's employment with Defendant, Springstroh, Eggleston, and/or Kawski frequently directed Ms. Czarapata to perform compensable work before clocking-in for a shift via the timekeeping system at Defendant.

5

34. During Ms. Czarapata's employment with Defendant and immediately before clocking-in for a shift via the timekeeping system, Springstroh, Eggleston, and/or Kawski frequently directed Ms. Czarapata to perform compensable work, such as going to the post office to pick up mail, working on projects or assignments at home, and running errands.

35. During Ms. Czarapata's employment with Defendant, Springstroh, Eggleston, and/or Kawski were aware that Ms. Czarapata performed compensable work prior to clocking-in for a shift via the timekeeping system at Defendant.

36. During Ms. Czarapata's employment with Defendant and immediately subsequent to clocking-out for a shift via the timekeeping system, Ms. Czarapata performed compensable work.

37. During Ms. Czarapata's employment with Defendant and immediately subsequent to clocking-out for a shift via the timekeeping system, Ms. Czarapata performed compensable work at the direction of Defendant.

38. During Ms. Czarapata's employment with Defendant, Springstroh, Eggleston, and/or Kawski frequently directed Ms. Czarapata to perform compensable work subsequent to clocking-out for a shift via the timekeeping system at Defendant.

39. During Ms. Czarapata's employment with Defendant and immediately subsequent to clocking-out for a shift, Springstroh, Eggleston, and/or Kawski frequently directed Ms. Czarapata to perform compensable work, such as dropping off UPS shipments, working on projects or assignments at home, and running errands.

40. During Ms. Czarapata's employment with Defendant, Springstroh, Eggleston, and/or Kawski were aware that Ms. Czarapata performed compensable work subsequent to clocking-out for a shift via the timekeeping system at Defendant.

41. During Ms. Czarapata's employment with Defendant and when Eggleston or Kawski directed Ms. Czarapata to perform compensable work prior to clocking-in or subsequent to clocking-out for a shift via the timekeeping system at Defendant, Springstroh often told Eggleston or Kawski, in Ms. Czarapata's presence, "You shouldn't do that," or words to that effect.

42. During Ms. Czarapata's employment with Defendant and immediately subsequent to clocking-out for a shift, Springstroh, Eggleston, and/or Kawski directed Ms. Czarapata to perform compensable work on weekends (Saturdays and Sundays).

43. During Ms. Czarapata's employment with Defendant, Ms. Czarapata performed compensable work on weekends (Saturdays and Sundays).

44. During Ms. Czarapata's employment with Defendant, Springstroh, Eggleston, and/or Kawski were aware that Ms. Czarapata should be compensated for all hours worked.

45. During Ms. Czarapata's employment with Defendant, Springstroh, Eggleston, and/or Kawski were aware that Ms. Czarapata would not be compensated for hours worked that were not recorded via Defendant's timekeeping system.

46. During Ms. Czarapata's employment with Defendant, Springstroh, Eggleston, and/or Kawski were aware that Defendant did not compensate Ms. Czarapata for any hours worked that were not recorded via Defendant's timekeeping system.

47. During Ms. Czarapata's employment with Defendant, Springstroh, Eggleston, and/or Kawski were aware that Defendant not compensating Ms. Czarapata for all hours worked was illegal.

7

48. During Ms. Czarapata's employment with Defendant, Defendant required Ms. Czarapata to be "on call," which required Ms. Czarapata to perform work, such as responding to text messages from Defendant, arriving at Defendant to enter applications, and running miscellaneous errands, such as going to the post office of retrieve mail.

49. During Ms. Czarapata's employment with Defendant and while Ms. Czarapata performed work when "on call," Defendant did not compensate her for work performed while "on call," despite Defendant telling Ms. Czarapata that it would compensate her for all work performed while "on call."

50. From time to time during Ms. Czarapata's employment with Defendant, Ms. Czarapata informed Springstroh, Eggleston, and/or Kawski that her time needed to be adjusted in Defendant's timekeeping system to accurately reflect all hours worked.

51. Upon information and belief and during Ms. Czarapata's employment with Defendant, Springstroh, Eggleston, and/or Kawski did not adjust Defendant's timekeeping system to accurately reflect all hours Ms. Czarapata worked.

52. At no time during Ms. Czarapata's employment at Defendant did Defendant require Ms. Czarapata's to receive explicit permission or authorization to work overtime.

53. Upon information and belief and during Ms. Czarapata's employment at Defendant, Defendant did not maintain any written policies regarding or relating to timekeeping, clocking-in, clocking-out, or overtime pay during Ms. Czarapata's employment at Defendant.

54. Defendant owes Ms. Czarapata's approximately $4,500 to $7,500 of unpaid wages at an overtime rate of pay for work Defendant suffered or permitted her to perform during her employment with it as an Administrator.

## FIRST CAUSE OF ACTION – FLSA OVERTIME PAY VIOLATIONS

55. Ms. Czarapata re-alleges and incorporates paragraphs 1-54 of this Complaint by reference.

56. Section 207(a)(1) of the FLSA regulates, among other things, the payment of an overtime premium by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.

57. Defendant was and is subject to the overtime pay requirements of the FLSA because Defendant is an enterprise engaged in commerce and/or its employees are engaged in commerce, as defined in Section 203(b) of the FLSA.

58. At all times material herein, Defendant was an employer as provided under the FLSA.

59. At all times material herein, Ms. Czarapata was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et seq.*

60. At all times material herein, Ms. Czarapata was an employee of Defendant as provided under the FLSA.

61. Defendant violated the FLSA by not compensating Ms. Czarapata with overtime premium pay for each hour she worked in excess of forty (40) hours each workweek.

62. During Ms. Czarapata's employment with Defendant, it intentionally violated 29 U.S.C. § 215(a) by failing to compensate Ms. Czarapata with overtime pay at a rate of time and one half for each hour she worked in excess of forty (40) hours each workweek.

63. Defendant's failure to properly and legally compensate Ms. Czarapata for all compensable work time was willfully perpetrated. Defendant has neither acted in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and as a result thereof, Ms. Czarapata is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 216(b) of the FLSA. Alternatively, should the Court find that Defendant did not act willfully in failing to pay overtime premium pay wages, Ms. Czarapata is entitled to an award of pre-judgment interest at the applicable legal rate.

64. As a result of the aforesaid willful violations of the FLSA's provisions, overtime compensation has been unlawfully withheld by from Ms. Czarapata by Defendant.

65. Ms. Czarapata is entitled to damages equal to the mandated overtime premium pay within the three years preceding the date of filing of this Complaint, plus periods of equitable tolling because Defendant acted willfully and knew or showed reckless disregard of whether its conduct was prohibited by the FLSA.

66. Pursuant to FLSA, 29 U.S.C. § 216(b), successful Plaintiffs are entitled to reimbursement of the costs and attorney's fees expended in successfully prosecuting an action for unpaid wages and overtime wages.

## SECOND CAUSE OF ACTION – WWPCL VIOLATIONS

67. Ms. Czarapata re-alleges and incorporates paragraphs 1-66 of this Complaint by reference.

68. At all times material herein, Ms. Czarapata was an employee of Defendant within the meaning of Wis. Stat. § 109.01(1r), Wis. Stat. §103.001(5), and Wis. Stat. §104.01(2)(a).

69. At all times material herein, Defendant was an employer of Ms. Czarapata within the meaning of Wis. Stat. § 109.01(2), Wis. Stat. §103.001(6), Wis. Stat. §104.01(3)(a), and Wis. Admin. Code § DWD 272.01(5).

70. At all times material herein, Defendant employed Ms. Czarapata within the meaning of Wis. Stat. §§109.01 *et seq.*, 103.01 *et seq.*, 104.01 *et seq.*, and Wis. Admin. Code § DWD 272.01.

71. During Ms. Czarapata's employment at Defendant, she worked overtime hours for which she was not paid time and one half.

72. At all times material herein, Ms. Czarapata regularly performed activities that were an integral and indispensable part of his/her principal activities without receiving compensation for these activities at an overtime rate of pay at time and one half.

73. The foregoing conduct, as alleged above, constitutes willful violations of the WWPCL.

74. Defendant willfully violated the WWPCL by failing to compensation at time and one half for each hour of overtime Ms. Czarapata worked.

75. As set forth above, Ms. Czarapata sustained losses in her compensation as a proximate result of Defendant's violations. Accordingly, Ms. Czarapata seeks damages in the amount of her unpaid compensation, injunctive relief requiring Defendant to cease and desist from their violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper. Under Wis. Stat. § 109.11, Ms. Czarapata may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages.

76. Ms. Czarapata seeks recovery of attorneys' fees and the costs of this action to be paid by Defendant, pursuant to the WWPCL.

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay, and/or reinstatement, compensatory and punitive damages, prejudgment and post judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;
2. Grant to Plaintiff attorneys' fees, costs and disbursements as provided by statute;
3. Grant to the Plaintiff liquidated damages against the Defendant; and
4. Grant to the Plaintiff whatever other relief this Court deems necessary and proper.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 12th day of January, 2015.

                                         WALCHESKE & LUZI, LLC
                                         Counsel for Plaintiff

                                         **s/ *Scott S. Luzi*** _____
                                         James A. Walcheske, State Bar No. 1065635
                                         Scott S. Luzi, State Bar No. 1067405
                                         Jesse R. Dill, State Bar No. 1061704

WALCHESKE & LUZI, LLC
200 South Executive Drive, Suite 101
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
jdill@walcheskeluzi.com